IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-cv-00522

| | | |
|---|---|---|
| DAVID A. REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff David A. Reynolds, by counsel, states as follows for his Complaint against Defendant United States of America:

**JURISDICTION, VENUE, AND PARTIES**

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2.      In compliance with 28 U.S.C. § 2675, Plaintiff filed an administrative tort claim with the Department of Veterans Affairs, which is attached as **Exhibit A**. That claim was received by the Office of General Counsel on May 12, 2022.

3.      The Department of Veterans Affairs denied this claim on February 10, 2023.

4.      On March 8, 2023, Plaintiff requested VA to reconsider the denial of his claim.

5.      The Department of Veterans Affairs denied Plaintiff's administrative tort claim for a second time on March 27, 2023.

6.      Accordingly, Plaintiff's causes of action are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the causes of action at issue in this case arose at Fayetteville VA Medical Center ("Fayetteville VAMC") at 2300 Ramsey Street, Fayetteville, North Carolina 28301.

8.      At all times relevant to this action, the United States owned and operated the Fayetteville VAMC and its affiliated clinics.

9.      At all times relevant to this action, the agents, servants, employees, and personnel of the United States were acting within the course and scope of their employment in providing and/or failing to provide medical care and treatment to Plaintiff.

10.     Plaintiff is a veteran of the United States Armed Forces, and thus is entitled to medical care and treatment at the Fayetteville VAMC and its affiliated clinics.

11.     The care described as follows was provided to Plaintiff at the Fayetteville VAMC unless otherwise stated.

12.     Submitted with this Complaint as **Exhibit B** is the Affidavit of Ahmad Tarabishy, MD, a Board-certified ophthalmologist. This Affidavit includes the opinions of a well-qualified expert competent to testify on the matters at issue in this case and sets forth specifically one or more negligent acts and/or omissions claimed to exist and the factual basis for each such claim.

13.     This Affidavit fulfills the pleading requirements of North Carolina law  as set forth in N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 9(j) (2013) as it establishes that the medical care rendered by Defendants and all medical records pertaining to the alleged negligence that are available to Plaintiff after reasonable inquiry have been reviewed before filing this Complaint by a person reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence who is willing to testify that the care provided by  Defendants did not comply with the appropriate standard of care.

14. Dr. Tarabishy is reasonably expected to qualify as an expert witness under N.C. R. Evid. 702 because he is currently licensed to practice in Florida, he is a qualified ophthalmologist to the same extent as Mr. Reynolds' treating VAMC providers, Dr. Mathews and Dr. Rodnite, has examined and responded to retinal detachments in patients similar to Mr. Reynolds, and he devoted the majority of his professional time in the year immediately preceding the 2021 occurrence at issue to the active clinical practice of ophthalmology.

15. Dr. Tarabishy is willing to testify that the medical care provided to Plaintiff by Fayetteville VAMC healthcare providers for his macula-off retinal detachment did not comply with the appropriate standard of care because he is familiar with the prevailing standard of care by an ophthalmologist with the same or similar training, education, and experience as Mr. Reynolds' treating VAMC providers, Dr. Mathews and Dr. Rodnite, in handling retinal detachments in the same or similar communities to Fayetteville, North Carolina in 2021, which requires surgical repair within one week.

## ALLEGATIONS

16. Plaintiff re-states and re-alleges paragraphs 1 through 15 as if fully stated herein.

17. Plaintiff has suffered permanent vision loss and recurrent retinal detachment in his left eye due to negligence on the part of his healthcare providers at the Fayetteville VAMC.

18. On October 7, 2021, Mr. Reynolds presented to the Eye Clinic at the Fayetteville VAMC complaining of blurry vision and left eye pain. He indicated that the symptoms had already been present for approximately four days, beginning on or around October 3, 2021.

19. During this visit, Plaintiff was diagnosed by resident Dr. Basil Mathews and VA staff ophthalmologist Dr. Judith Rodnite with a macula-off retinal detachment in his left eye. Despite the diagnosis, typically recognized and treated as an urgent medical emergency, the

3

resulting assessment/plan from Drs. Mathews and Rodnite recommended a follow-up and surgical repair of the detachment "within 1-2 weeks."

20. In the weeks following his visit to the Fayetteville VAMC, not only did Plaintiff's medical providers fail to contact him to schedule surgery, but they also failed to return his several calls and attempts to initiate contact and scheduling.

21. Fayetteville VAMC personnel eventually asked Plaintiff to schedule his own appointment with Carolina Eye Associates ("CEA"), advising him that he would be referred and his records sent over immediately. However, when Plaintiff called CEA to book his appointment, he was told that he could not yet book an appointment because the VAMC had not referred him or sent the requisite medical records to their office.

22. Plaintiff was not seen for continued treatment until November 9, 2021, more than one month after the Fayetteville VAMC medical providers initially recognized his condition, and nearly six weeks after the onset of his symptoms. At his November 9th visit, Plaintiff was treated by retina specialist Dr. Arghavan Almony, who confirmed a total macula-off retinal detachment in his left eye. Upon scheduling the surgery, Dr. Almony advised Plaintiff that he was "at increased risk of recurrent retinal detachment based on [the] length of time" the retinal detachment was left untreated after the onset of symptoms.

23. Subsequently, Plaintiff underwent retinal surgery on November 16, 2021, at the Eye Surgery Center of the Carolinas, within a week of being seen and diagnosed at Carolina Eye Associates.

24. Plaintiff attended routine post-operative visits at CEA on November 17 and November 23, 2021.

25. At his one-month post-operative visit at CEA on December 17, 2021, Dr. Almony informed Plaintiff that a second retinal detachment was present in his left eye. Further, Dr. Almony again advised Mr. Reynolds that the risk of re-detachment was increased because "the [retinal detachment] symptoms had been there for a month prior to" the attempted surgical repair.

26. Plaintiff reasonably declined the option of undergoing a second attempt at surgical repair on Dr. Almony's advice that doing so would involve invasive positioning with no higher likelihood that re-detachment would not occur again.

27. Mr. Reynolds continues to suffer from chronic retinal detachment in his left eye.

28. As a result of the retinal detachment, Plaintiff has lost all vision in his left eye. It is more likely than not that he will have ongoing medical costs associated with the detached retina due to the long-term risks involved with this condition.

29. Had Fayetteville VAMC healthcare providers complied with the appropriate standard of care in providing medical care and treatment to Plaintiff, it is more likely than not that a timely surgical repair of his retinal detachment would have been successful, and that he would not have suffered permanent loss of vision. As a result of the failure, Plaintiff is expected to have ongoing medical needs as patients with a detached retina in one eye are at increased risk for complications and detachments in the other eye. Plaintiff will need yearly dilated eye examinations, annual or biennial updates to lens prescriptions for special protective polycarbonate glasses, and regular evaluations from an occupational therapist.

30. As a complication of his chronic retinal detachment, Plaintiff has also developed rubeosis iridis, a condition which causes aggressive neovascular glaucoma and severe eye pain and could eventually necessitate the removal of his left eye. Such a degeneration will require

5

Plaintiff to make frequent visits to a glaucoma or retina specialist for treatment with eyedrops, medications, lasers, intraocular injections, and possibly surgical removal of his left eye.

31.     As a result of the failure of Fayetteville VAMC medical providers to timely schedule or refer Plaintiff to a retinal specialist for surgical repair on the appropriate emergency basis, he suffered permanent vision loss in his left eye.

32.     Plaintiff's macula-off re-detachment and loss of vision in his left eye was a direct and proximate result of the negligent care provided to him by his healthcare providers at the Fayetteville VAMC.

## COUNT I – NEGLIGENCE

33.     Plaintiff re-states and re-alleges paragraphs 1 through 32 as if fully stated herein.

34.     As a provider of medical services to Plaintiff, the United States and its agents, servants, or employees at the Fayetteville VAMC and its affiliated clinics owed Plaintiff a duty to provide him care consistent with the governing standard of medical care.

35.     The agents, servants, or employees of the United States at the Fayetteville VAMC and its affiliated clinics, while acting within the scope of their employment, violated the appropriate standards of medical care in the following respects:

a.      Negligent delay in providing Plaintiff with prompt medical care for the macula-off retinal detachment in his left eye, resulting in failed surgical repair and complete vision loss in his left eye;

b.      Negligent delay in arranging for and/or referring Plaintiff to a retina specialist for further evaluation and treatment, causing increased risk of chronic re-detachment; and

c. Other deviations from the standard of care, which will be developed through further investigation, discovery, and expert review.

36. Indeed, Plaintiff's VA ophthalmologists breached the standard of care in failing to order timely treatment on the appropriate urgent/emergent basis.

37. Upon initial presentation to the Fayetteville VAMC on October 7, 2021, Plaintiff displayed obvious symptoms of a macula-off retinal detachment, a condition generally accepted as urgent with the appropriate standard of care requiring surgical repair within one week of the onset of symptoms or diagnosis.

38. Though noting these symptoms and diagnosing Plaintiff with a retinal detachment upon his initial visit to the Fayetteville VAMC, his treating ophthalmologists instead recommended that he should be seen and treated "within 1-2 weeks." It should be noted that even this negligent timetable was not met by the Fayetteville VAMC.

39. Once the Fayetteville VAMC recognized the condition, it failed to ensure a timely surgical repair. Further, the VAMC failed to answer or return Plaintiff's calls for weeks.

40. After eventually shifting responsibility to Plaintiff to schedule his own appointment with Carolina Eye Associates, the Fayetteville VAMC further breached the standard of care in failing to timely send the necessary referral and medical records to CEA.

41. By the time Plaintiff was finally seen by a specialist at Carolina Eye Associates on November 9, 2021, and when he underwent surgery one week later on November 16, 2021, more than a full month had passed since the Fayetteville VAMC diagnosed retinal detachment in the left eye, far outside of the one-week repair period required under the standard of care.

42. Had the standard of care been complied with and Plaintiff's surgery been performed by October 10, 2021, within a week after the onset of his symptoms, or even by October 14, 2021,

7

within a week of his initial diagnosis at the Fayetteville VAMC, the surgical repair more likely than not would have been successful. Because of the more than month-long delay, Plaintiff sustained chronic retinal detachment in his left eye.

43. As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered permanent vision loss and chronic retinal detachment..

44. Had Plaintiff been timely and appropriately treated for his macula-off retinal detachment, he would not have sustained permanent vision loss.

45. As a direct, proximate, and sole result of the above-described negligence of the Defendant, other agents or employees of the Defendant and/or as a direct, proximate and concurrent result of the above-described negligence of the Defendant and the agents and employees of the Defendant, Plaintiff was harmed and is entitled to recover damages for the injuries and damages Plaintiff sustained, including:

a. Expenses for care, treatment, and hospitalization incident to the injury;

b. Compensation for pain and suffering;

c. Compensation for the loss of use of a part of the body; and

d. Other damages proximately caused to Plaintiff by Defendant's negligence.

46. Consequently, Plaintiff is entitled to recover damages from Defendant in the amount of $3,000,000.

WHEREFORE, Plaintiff requests the Court grant judgment in his favor against Defendant in the amount of Three Million Dollars ($3,000,000.00), together with any other costs he may be lawfully entitled to recover.

Dated this 25th day of September, 2023.

Respectfully submitted,

DAVID A. REYNOLDS

By:     */s/ Jeremy M. Wilson*

Brewster S. Rawls, VA Bar No. 23604*
Glen H. Sturtevant, VA Bar No. 73458*
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, Virginia 23231
(804) 344-0038
(804) 782-0133 – Facsimile
brawls@rawlslawgroup.com
gsturtevant@rawlslawgroup.com
Attorneys for Plaintiff

Jeremy M. Wilson, NC Bar No. 43301
Ward and Smith, P.A.
127 Racine Drive
University Corporate Center (28403)
Post Office Box 7068
Wilmington, NC 28406-7068
(910) 794-4870
(910) 794-4877 – Facsimile
JW@wardandsmith.com
Local Civil Rule 83.1(d) Attorneys for Plaintiff

*Notice of Special Appearance forthcoming*

9